UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

02 DEC 12  AM 5: 20

U.S. ........ .1
N.D. OF ALABAMA

| | | |
|---|---|---|
| SAMMY D. LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-01-S-3134-S |
| | ) | |
| ADVANTAGE SALES & MARKETING, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

DEC 1 2 2002

### MEMORANDUM OPINION

Plaintiff, Sammy D. Lewis, alleges that her former employer discriminated against her because of her sex, and later retaliated against her in response to her complaints about such discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Plaintiff also alleged a state-law claim of negligent hiring, training, supervision, and retention, but she expressly abandoned that claim at the summary judgment stage.[1] The action now is before the court on defendant's motion for summary judgment, as well as a "motion to strike or, in the alternative, to supplement defendant's evidentiary submission."

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[1] Plaintiff's brief opposing summary judgment, at 27.

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City*

*of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real*

*Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes

that defendant's motion for summary judgment should be granted in part and denied in part.

Defendant's motion to strike is due to be denied, but the alternative aspect of that motion, to

supplement defendant's evidentiary submission, will be granted.

## I. SUMMARY OF FACTS

Defendant, Advantage Sales of Alabama, Inc.,[2] is a brokerage firm that facilitates the sale

of a wide range of grocery products by manufacturers to wholesalers, and, by wholesalers to

retailers.[3] Plaintiff was hired by defendant as a part-time "retail sales representative" on February

24, 1989.[4] She represented wholesalers and their products in sales to retail grocery stores.[5] Plaintiff

---

[2] Defendant explains that its name is not correctly stated in either the body of the complaint or its caption, and that its true name is "Advantage Sales of Alabama, Inc." Answer, at 1.

[3] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 88-89.

[4] *Id.* at 54; Tab 2 (Junkins deposition), at Exhibit 8 (Lewis record of employment).

[5] *Id.*, Tab 1 (Lewis deposition), at 88-89.

began working in that same capacity on a full-time basis on November 13, 1991.[6]

## A.    Plaintiff's Promotion to Retail Supervisor

Plaintiff was promoted to the position of "retail supervisor" on May 1, 1997.[7] Even so, she questions the propriety of defendant's selection process. Prior to plaintiff's promotion, there were two vacant retail supervisory positions.[8] The person who apparently was primarily responsible for selecting individuals to fill those positions was Wayne Junkins, director of retail at defendant's Birmingham, Alabama office.[9] Plaintiff points out that Junkins initially offered both positions to male candidates, Jim Cox and Gary Starling, and did not advertise (or "post") the availability of those positions to other employees.[10] Plaintiff nevertheless learned of the vacancies and voiced her interest to defendant's general manager, Jim Bales, who was Junkins's supervisor.[11] Bales arranged for plaintiff to interview for the position that Junkins previously had offered to Jim Cox.[12] Cox ultimately declined the promotion, because he did not find the salary acceptable.[13] Rick Ramey, defendant's assistant director of retail, then offered the position to plaintiff, and she accepted.[14]

## B.    Plaintiff's Claim That She Was Paid Less Than a Subordinate

Commensurate with her promotion to retail supervisor, plaintiff received a pay raise.[15] Even so, plaintiff *believed* that she still was paid a lower wage than Cox after he became her subordinate.[16]

---

[6] *Id.*, Tab 2 (Junkins deposition), at Exhibit 8 (Lewis record of employment).

[7] *Id.*

[8] *Id.*, Tab 1 (Lewis deposition), at 166-67.

[9] *Id.* at 165-67.

[10] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 166-67.

[11] *Id.* at 166.

[12] *Id.* at 167.

[13] *Id.* at 63-64.

[14] *Id.* at 65-66.

[15] *Id.*, Tab 2 (Junkins deposition), at Exhibit 8 (Lewis record of employment).

[16] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 146.

However, plaintiff does not *know* exactly how much Cox was paid during the time that she was his supervisor.[17] Her speculation nevertheless has a plausible basis. When questioned at deposition about her contention that this pay disparity existed, plaintiff explained: "Jim [Cox] was already making more than what they were going to pay for the [retail] supervisor [position]. And [Rick Ramey] told me point-blank that that was less than what Jim was making."[18]

## C.   Plaintiff's Demotion Back to Retail Sales Representative

Plaintiff's promotion to retail supervisor was short-lived; she was demoted to her previous position of retail sales representative about nine months later, on February 9, 1998.[19] Defendant explains that this demotion was precipitated by business necessity, a downturn in sales.[20] Plaintiff accepted this explanation, stating in her brief submitted in opposition to summary judgment that "[she] does not complain or believe that this action was discriminatory."[21]

## D.   Plaintiff's Claim That She Was Paid Less Than a Male Retail Sales Representative

Plaintiff nevertheless asserts that she was paid less than a male retail sales representative, Gary Starling.[22] She began her employment with defendant on February 24, 1989, and Starling was

---

[17] *Id.*

[18] *Id.*, at 64-65 and 146.

[19] *Id.*, Tab 2 (Junkins deposition), at Exhibit 8 (Lewis record of employment).

[20] *Id.*, Tab 1 (Lewis deposition), at 53, 66.

[21] Plaintiff's brief opposing summary judgment, at 3.

[22] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 130. Plaintiff also mentioned another male employee, David Reynolds, during deposition, but made no argument in her brief that Reynolds was paid a higher wage. Accordingly, the court finds that, even if plaintiff asserted a claim that Reynolds was discriminatorily paid a higher wage than she was, she abandoned that claim by failing to address it in her brief. Issues and contentions not raised in a party's brief are deemed abandoned. *See, e.g., Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment

hired seven years later, on June 12, 1996.[23] Further, while plaintiff and Starling were both promoted to retail supervisor in May of 1997, he was demoted to retail sales representative in September of 1997, and she was not demoted until the following year.[24] Even so, Starling continued to receive pay raises, while she was refused.[25]

Defendant counters by pointing out that, despite the raises received by Starling following his demotion, plaintiff still earned a higher salary until Starling received a pay raise in October of 2000, after which he made only four cents per hour more than plaintiff.[26] Defendant explains this raise by simply asserting that Starling had "done a super job as a retail sales representative," and that gender was never a consideration in the award of any pay increase.[27]

## E.   Changes to Plaintiff's Sales Territory

As a retail sales representative, the bulk of plaintiff's work involved traveling from one

---

against him." *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (some citations omitted). *Cf., e.g., Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999) ("Issues that are not clearly outlined in an appellant's initial brief are deemed abandoned.") (citations omitted); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.") (citing *Allstate Insurance Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994)); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to address issue for failure of party to argue it in its brief on appeal).

[23] Defendant's evidentiary submissions, Tab 2 (Junkins deposition), at Exhibit 8 (Lewis record of employment) and Exhibit 9 (Starling record of employment).

[24] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 137-38.

[25] *Id.* at 138-40.

[26] *Id.* at Exhibit 2 (List of Full Time Sales Representatives).

[27] Defendant's brief in support of summary judgment, at 13.

grocery store to the next in an assigned territory.[28]  At each store, plaintiff's job was to: "count products displayed on the shelves to determine if all authorized types of products are in fact on the shelf; ensure that the products are 'sellable' or displayed on the shelves in an attractive way . . . ; ensure that the products [defendant] represents are taking up the appropriate shelf space . . . ;" and other tasks related to the marketing of grocery items.[29]  During her first years of employment with defendant, plaintiff's territory primarily consisted of independently-owned grocery stores.[30]  On October 23, 2000, however, plaintiff's territory was changed from one that predominantly contained independent stores to one composed mainly of chain stores.[31]  Plaintiff explains that this change "adversely affected [her] ability to earn extra money that working with independents afforded [her]."[32]  Plaintiff adds that Ronald Fair, a male retail sales representative, was assigned some of the independent grocery stores that were previously part of her territory and, further, that defendant "has only ten retail sales representatives that call on predominately independent stores and all of them are men."[33]  She also notes that Junkins once commented that "male sales representatives should be the ones to call on independent retail stores because they [are] better in calling on independents than females."[34]  Plaintiff further testified that, on some date that she could not recall, Junkins "made the comment . . . that he didn't want . . . women calling on independents but that in my area, he had no choice, because the stores were so geographically close together."[35]

---

[28] Defendant's evidentiary submissions, Tab 2 (Junkins deposition), at Exhibit 7 (Retail Sales Representative Job Description).

[29] Defendant's brief in support of summary judgment, at 2-3.

[30] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 231.

[31] Id. at 230-31.

[32] Plaintiff's brief opposing summary judgment, at 5.

[33] Id.; defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 230-31.

[34] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 70.

[35] Id. at 100.

**F.      Defendant's Refusal to Allow Plaintiff to Attend Buying Fairs**

Several times a year, various wholesalers sponsor "buying fairs," at which independent grocery store owners mix and mingle with manufacturers, the sponsoring wholesale distributors, and brokers for the purpose of negotiating the purchase of grocery products at discount prices.[36] Chain stores do not participate in these events.[37] Defendant routinely sends retail sales representatives to these fairs.[38] Plaintiff desired to attend these buying fairs because "it was an opportunity for her to see all of her customers and to earn extra incentive money."[39] Plaintiff further explains that, despite the fact that her territory was changed (on October 23, 2000) to one consisting mainly of chain stores, there were "probably . . . at least a few independent grocery stores on every route that [she] ever had.  [Plaintiff didn't] ever recall having exclusively just chain stores.  [She] may have, but it didn't last very long."[40]

Plaintiff asserts that several of her requests to attend buying fairs were denied, noting that the last time that she attended such an event was "in 1998 or 1999."[41]  She adds that her original request to attend that buying fair was denied by Junkins, and she attended only after being instructed to do so by her then-immediate supervisor, Carol Clemons.[42]  At deposition, plaintiff testified that "[Junkins] never said because I was a woman, I couldn't go [to the buying fairs] . . . .  [But] [h]e did say that we need to have the male sales reps there."[43]

---

[36] *Id.* at 85.

[37] *Id.* at 86-87.

[38] *Id.* at 88-89.

[39] Plaintiff's brief opposing summary judgment, at 6.

[40] *Id.*; Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 89-90.

[41] Plaintiff's brief opposing summary judgment, at 6.

[42] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 95. Notably, Clemons also sued defendant for gender discrimination. *See* plaintiff's evidentiary submissions, Tab 1 (Clemons deposition), at 1.

[43] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 96.

### G.   Defendant's "Promotion" of a Male Co-Employee

Carol Clemons was demoted from retail supervisor to retail sales representative on August 22, 2000.[44] Plaintiff telephoned Junkins the next day, and told him that she was interested in filling Clemons's former position.[45] She also reminded Junkins that he had told her, when she was demoted in 1998, that she would be considered for the next open retail supervisor position.[46]   Junkins responded to plaintiff's request "by saying that he did not know what they were going to do and that he would get back with her about the position, but he never did."[47]

Junkins supervised the employees previously assigned to Clemons for a short period of time, but those persons soon were placed under the supervision of another retail supervisor, Bob Tillery.[48] Defendant explains that Tillery was not "promoted" to Clemons's old retail supervisor position, because that position was eliminated as part of an organizational restructuring,[49] and that Tillery merely assumed Clemons's supervisory duties in addition those he already was performing.[50]

### H.   Plaintiff's Complaint to Junkins's Supervisor and EEOC Charge

Plaintiff wrote a letter to Junkins's supervisor, Greg Phillips, vice president of grocery sales for Alabama, on November 12, 2000, complaining that she should have been awarded Clemons's former retail supervisor position.[51]   Phillips stated in response that, "should another supervisory

---

[44] *Id.* at 248.

[45] *Id.*

[46] *Id.* at 249.

[47] Plaintiff's brief opposing summary judgment, at 7; defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 249.

[48] Defendant's evidentiary submissions, Tab 2 (Junkins deposition), at 61-63.

[49] Defendant's brief in support of summary judgment, at 7-8.

[50] *Id.*; defendant's evidentiary submissions, Tab 2 (Junkins deposition), at 61-63.

[51] Defendant's evidentiary submissions, Tab 4 (Phillips deposition), at Exhibit 2 (Phillips Dec. 1, 2000 letter). A copy of the letter that plaintiff wrote to Phillips is attached behind the Phillips letter, but apparently was not entered as a separate exhibit.

-8-

position become available, the position will be posted and all qualified Advantage Sales employees will be allowed to interview for the position."[52]

## I.   Plaintiff's EEOC Charge

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on November 21, 2000, complaining that she had been subjected to "different terms and conditions than the male employees," and cataloging the preceding events as the factual bases for her charge.[53]

## J.   Defendant's Subsequent Promotion of Another Female Employee

Another female retail sales representative, Ellen Dawkins, was selected for promotion to the position of district manager[54] during April of 2001. The promotional decision effectively was made by Phil Miller, a director of retail assigned to defendant's Jacksonville, Florida office.[55] This opportunity for promotion was not posted.[56] Plaintiff interpreted defendant's failure to post the position vacancy as a breach of Greg Phillips's promise, as well as retaliation for her EEOC charge.[57] Defendant responds by arguing that Dawkins's promotion had nothing to do with plaintiff's complaints of discrimination because Dawkins was promoted more than four months after plaintiff's EEOC charge, and, she was promoted by Phil Miller, not Greg Phillips.[58] In an affidavit which is the subject of defendant's motion to supplement, Miller asserts that he has never met

---

[52] *Id.*

[53] Complaint, at Exhibit A (Lewis EEOC charge).

[54] The terms "district manager" and "retail supervisor" are used interchangeably by the parties. *See infra* note 72.

[55] Plaintiff's evidentiary submissions, Tab 2 (Dawkins deposition), at 37-38.

[56] Defendant's evidentiary submissions, Tab 2 (Junkins deposition), at 64.

[57] Plaintiff's brief opposing summary judgment, at 12.

[58] Defendant's reply brief, at 8.

plaintiff, and he did not know that she had filed an EEOC charge.[59]

## II. DISCUSSION

**A.     Disparate Treatment Based Upon Plaintiff's Gender**

Plaintiff's Title VII disparate treatment claim is evaluated under the following analytical

framework:

> Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence. *See* [*Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir. 1996)] (observing that a "'plaintiff must, by either direct or circumstantial evidence, demonstrate by a preponderance of the evidence that the employer had a discriminatory intent'" to prove a disparate treatment claim) (quoting *Batey v. Stone,* 24 F.3d 1330, 1334 (11th Cir.1994)). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998) (citing *Carter v. City of Miami,* 870 F.2d 578, 580-81 (11th Cir.1989)). Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar *McDonnell Douglas* paradigm for circumstantial evidence claims. To establish a prima facie case of disparate treatment under this rubric, a plaintiff "must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999). Once these elements are established, a defendant has the burden of producing "legitimate, non-discriminatory reasons for its employment action." *Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir.1997) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination. *See Holifield,* 115 F.3d at 1565.

*E.E.O.C. v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1286 (11th Cir. 2000) (footnote omitted).

Plaintiff bases her claim that defendant subjected her to disparate treatment because of her

sex upon the following incidents:

> (1)     the fact that, while plaintiff was a retail supervisor from May of 1997 until February of 1998, one of her subordinates (Jim Cox) was paid a higher wage than she;

---

[59] Defendant's supplementary evidentiary submission (Miller affidavit) ¶ 6.

(2)   Bob Tillery's "promotion" to retail supervisor in the fall of 2000;

(3)   pay raises awarded to Gary Starling, but not to plaintiff, following their demotions from retail supervisor to retail sales representative, such that plaintiff went from making a higher wage than Starling in 1998, to Starling making four cents per hour more than plaintiff in October of 2000;

(4)   changes made to plaintiff's sales territory on October 23, 2000; and,

(5)   defendant's refusal to allow plaintiff to attend buying fairs, with the most recent refusal occurring during the spring of 2002.[60]

## 1.   Timeliness of plaintiff's claims

A plaintiff must satisfy a number of administrative prerequisites before filing a suit based upon Title VII.  Foremost among these is the requirement that a charge of discrimination be submitted to the Equal Employment Opportunity Commission within 180 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge."); *Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1387 (11th Cir. 1982) ("In order to assert a claim of racial discrimination under Title VII, a claimant must file a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred.").  If a plaintiff fails to file a charge within this 180-day period, her claim may be procedurally barred for untimeliness. *See Delaware State College v. Ricks*, 449 U.S. 250, 256, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980); *Everett v. Cobb County School District*, 138 F.3d 1407, 1410 (11th Cir. 1998).

The 180-day period prescribed by 42 U.S.C. § 2000e-5(e)(1) "begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred." *Allen*

---

[60] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 94-95.

*v. U.S. Steel Corp.*, 665 F.2d 689, 692 (5th Cir. 1982); *see also, e.g., Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1387 (11th Cir. 1982) (same) (quoting *Allen* and citing *McWilliams v. Escambia County School Board*, 658 F.2d 326, 328 (5th Cir. 1981), and *Yates v. Mobile County Personnel Board*, 658 F.2d 298, 299 (5th Cir. 1981)).

Plaintiff filed her EEOC charge on November 21, 2000. All of the events forming the basis of her disparate treatment claim occurred within the six month period preceding that date, except for that portion of her claim alleging that, while she was a retail supervisor, one of her subordinates (Jim Cox) was paid a higher wage. Plaintiff has not been Cox's supervisor since February 9, 1998, well beyond the 180 day period preceding the filing of her EEOC charge. Further, plaintiff knew at the time she accepted the retail supervisor position that Cox received a higher salary, even though he then was classified as a retail sales representative.[61] She has offered no argument as to how that portion of her claim can be construed as timely, nor has she contended that it should be equitably tolled. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir.1993) (in order for equitable tolling to be appropriate, the facts must show that, in the 180-day period prior to filing an EEOC charge, the plaintiff had no reason to believe that she was the victim of unlawful discrimination). Thus, there is no basis for holding this portion of plaintiff's claim as timely.

### 2.    Direct evidence

Plaintiff asserts that she has direct evidence of defendant's intent to discriminate against her on the basis of gender in the form of several comments made by Wayne Junkins, director of retail. For example,

(1)    Jim Cox told plaintiff that Junkins had "pressured" him to interview for the retail supervisor job that was eventually awarded to plaintiff in 1997. Plaintiff testified

---

[61] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 146.

that "[Junkins] told Jim Cox . . . they needed male supervisors."[62]

(2)    Carol Clemons testified that, "numerous times on interviews, when we would be interviewing for people in different areas," Junkins commented that "[y]ou know that we could pay a woman less of a salary."[63]

(3)    After denying plaintiff's request to attend "buying fairs," Junkins told her that "we need to have the male sales reps there."[64]

(4)    Junkins "made the comment one time that he didn't want [plaintiff] to be calling on independents because he didn't want women calling on independents but that in [plaintiff's] area, he had no choice, because the stores were so geographically close together."[65]    Plaintiff similarly testified that Junkins told her "male sales representatives should be the ones to call on independent retail stores because they were better in calling on independents than females were."[66]

Direct evidence is generally defined as evidence which, if believed, proves the existence of a fact in issue without the need of an inference or presumption. *See, e.g., Bass v. Board of County Commissioners*, 256 F.3d 1095, 1111 (11th Cir. 2001) (the term "direct evidence," when used in the context of Title VII race discrimination claim, "refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination"); *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require . . . an inferential leap between fact and conclusion."); *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997) (defining direct evidence of discrimination as evidence which, "if believed, proves [the] existence of [a] fact in issue without inference or presumption").

In the context of employment discrimination cases, direct evidence of an employer's intent

---

[62] *Id.* at 169.

[63] Plaintiff's evidentiary submissions, Tab 1 (Clemons deposition), at 37.

[64] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 96.

[65] *Id.* at 100.

[66] *Id.* at 70.

to discriminate on the basis of some prohibited characteristic is more specifically defined as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *Carter,* 132 F.3d at 641 (in turn quoting *Caban-Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir. 1990)).  As such, "direct evidence of discrimination is powerful evidence capable of making out a prima facie case essentially by itself." *Jones v. Bessemer Carraway Medical Center,* 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) (per curiam).

Eleventh Circuit precedent clearly establishes that only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible characteristic, will be deemed to constitute direct evidence of discrimination. *See, e.g., Damon,* 196 F.3d at 1358-59; *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir. 1999); *Earley v. Champion International Corp.,* 907 F.2d 1077, 1081-82 (11th Cir. 1990); *Carter,* 870 F.2d at 582.  "If an alleged statement at best merely suggests a discriminatory motive, then it is by definition only circumstantial evidence." *Schoenfeld,* 168 F.3d at 1266 (citing *Burrell,* 125 F.3d at 1393).  "An example of 'direct evidence would be a management memorandum saying, 'Fire Earley — he is too old.''" *Damon,* 196 F.3d at 1359 (quoting *Earley,* 907 F.2d at 1082).

Two additional points must be emphasized. First, "stray remarks in the workplace . . . cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S. Ct. 1775, 1804-05, 104 L. Ed. 2d 268 (1989) (O'Connor, J., concurring).

Second, "statements made by nondecisionmakers, or statements by decisionmakers unrelated

-14-

to the decisional process itself," do not constitute direct evidence of discriminatory intent. *Id.*; *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (same). "For statements of discriminatory intent to constitute direct evidence of discrimination, *they must be made by a person involved in the challenged decision.*" *Trotter v. Board of Trustees of the University of Alabama*, 91 F.3d 1449, 1453-54 (11th Cir. 1996) (emphasis supplied); *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 701 (11th Cir. 1998) ("A statement by a person who played no part in the adverse personnel decision is not direct evidence of discrimination.") (citing *Mauter v. The Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir. 1987)); *Eiland v. Trinity Hospital*, 150 F.3d 747, 751-52 (7th Cir. 1998) (rejecting plaintiff's attempts at imputing racial animus of co-worker to decisionmaker).

In summary, "[t]o amount to direct evidence, a statement must:  (1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).

Plaintiff's testimony that Cox told her that Junkins said — while recruiting Cox for an open retail supervisor position — that defendant "needed male supervisors" clearly reflects an intent to discriminate against females in the promotion process. This portion of plaintiff's testimony also is hearsay, however. *See* Fed. R. Evid. 801(c).  When considering a motion for summary judgment, "a court may only consider evidence that is admissible or that could be presented in admissible form" at trial. *Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001) (citing *Prichard v. Southern Company Services*, 92 F.3d 1130, 1135 (11th Cir. 1996) (holding that a plaintiff "cannot use inadmissible hearsay to defeat summary judgment when that hearsay will not be reducible to

admissible form at trial") (in turn citing *McMillian v. Johnson*, 88 F.3d 1573, 1583-84 (11th Cir.

1996) (same)). Ordinarily, a claimant's "testimony recounting what [another person] allegedly told

[her] does not raise a genuine fact issue because it is hearsay." *Churchill Business Credit, Inc. v.*

*Pacific Mutual Door Co.*, 49 F.3d 1334, 1337 (8th Cir.1995); *see also Firemen's Fund Insurance*

*Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir.1993) ("Inadmissible hearsay evidence alone may not

defeat a summary judgment motion"); *United States v. Jefferson*, 925 F.2d 1242, 1252-53 (10th

Cir.1991) ("Whether evidence is offered as circumstantial evidence as opposed to direct evidence

has nothing to do with whether it constitutes inadmissible hearsay").

Even so, as the foregoing authorities indicate, hearsay testimony may be considered at the

summary judgment stage if it could be presented in admissible form at trial. The Eleventh Circuit

explained the standard of "evidence that may be reduced to admissible form at trial" in *Macuba v.*

*Deboer*, 193 F.3d 1316 (11th Cir. 1999), saying:

> We believe that the courts have used the phrases "reduced to admissible
> evidence at trial" and "reduced to admissible form" to explain that the out-of-court
> statement made to the witness (the Rule 56(c) affiant or the deposition deponent)
> must be admissible at trial for some purpose. For example, the statement might be
> admissible because it falls within an exception to the hearsay rule, or does not
> constitute hearsay at all (because it is not offered to prove the truth of the matter
> asserted), or is used solely for impeachment purposes (and not as substantive
> evidence).

*Id.* at 1323-24. Here, plaintiff is testifying as to what Jim Cox told her. Cox's account of what

Junkins said to him could be reduced to admissible form at trial by calling Cox as a witness. While

plaintiff has not yet submitted her witness list for trial, the court will assume that plaintiff intends

to call Cox at trial. Accordingly, plaintiff's account of what Cox told her may be considered. *See,*

*e.g., Catrett v. Johns-Manville Sales Corp.*, 826 F.2d 33, 37-38 (D.C. Cir. 1997) (reversing the

district court for rejecting a letter containing hearsay and granting summary judgment in favor of

a defendant, because "the substance of the letter [was] reducible to admissible evidence in the form of trial testimony" by its author); *Williams v. Borough of West Chester,* 891 F.2d 458, 466 (3d Cir. 1990) (holding that hearsay evidence produced in an affidavit opposing summary judgment could be considered because it could later be presented at trial through testimony by the declarant).

On the other hand, Carol Clemons's testimony that Junkins said "numerous [unspecified] times," while interviewing candidates, that "we could pay a woman less of a salary"[67] clearly is admissible; and, it demonstrates, without the need for inference, an intent to pay female employees a lower wage. Similarly, Junkins's remark to plaintiff that "male sales representatives should be the ones to call on independent retail stores because they are better in calling on independents than females"[68] demonstrates Junkins's intent to impermissibly base the assignment of sales territories on gender. Further, Junkins's statement that plaintiff would not be allowed to attend buying fairs, because "we need to have the male sales reps there," clearly evinces a gender-based animus. Finally, the evidence reflects that Junkins was a decisionmaker, and each comment specifically relates to the challenged employment decisions.

In summary, plaintiff has set forth direct evidence to support three of the incidents which form part of her disparate treatment claim: the award of pay raises to Starling, ultimately causing him to be paid a higher (albeit, only modestly higher) wage for performing the same job; changes to plaintiff's sales territory; and Junkins's refusal to allow plaintiff to attend buying fairs. In light of such evidence, defendant "may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S. Ct. 1775, 1795, 104

---

[67] Plaintiff's evidentiary submissions, Tab 1 (Clemons deposition), at 37.
[68] Defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 70.

L. Ed. 2d 268 (1989) (plurality opinion);[69] *see also, e.g., Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L. Ed. 2d 471 (1977); *Pulliam v. Tallapoosa County Jail,* 185 F.3d 1182, 1184 (11th Cir. 1999); *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1084 (11th Cir. 1996). Accordingly, summary judgment is due to be denied as to those portions of plaintiff's disparate treatment claim.

### 3.    Plaintiff's claim regarding Bob Tillery's "promotion"

Bob Tillery assumed Carol Clemons's supervisory duties shortly after her demotion to retail sales representative.[70] Clemons's demotion was precipitated by a business reorganization, during which defendant's grocery and general merchandise lines were consolidated.[71] Prior to her demotion, Clemons had been retail supervisor over grocery items, while Tillery had been retail supervisor of general merchandise items.[72] When defendant merged these two lines, Clemons's position was combined with Tillery's.[73]

Ignoring these facts, plaintiff asserts that defendant discriminated against her by not allowing her the opportunity to compete for Clemons's former position.[74] There is no merit to that claim: there was no promotional opportunity for anyone. Tillery simply assumed Clemons's duties in

---

[69] The Supreme Court also held with respect to such evidence that, once a plaintiff "shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244-45, 109 S. Ct. 1775, 1787-88, 104 L. Ed. 2d 268 (1989) (plurality opinion). Justice O'Connor's concurring opinion in *Price Waterhouse* is to the same effect: "Once a Title VII plaintiff has demonstrated by direct evidence that discriminatory animus played a significant or substantial role in the employment decision, the burden shifts to the employer to show that the decision would have been the same absent discrimination." *Id.* at 276, 109 S. Ct. 1804 (O'Connor, J., concurring).

[70] Defendant's evidentiary submissions, Tab 2 (Junkins deposition), at 61.

[71] *Id.,* Tab 1 (Lewis deposition), at 246-47.

[72] *Id.,* Tab 2 (Junkins deposition), at 212; plaintiff's evidentiary submissions, Tab 1 (Clemons deposition), at 22. Tillery's former job title was also referred to as "District Manager" or "DM." The parties use those terms, and "retail supervisor" interchangeably, and they appear to have identical meanings. *See, e.g., id.* at 62, 136.

[73] Defendant's evidentiary submissions, Tab 2 (Junkins deposition), at 60-62.

[74] *See generally* plaintiff's brief opposing summary judgment, at 16-20.

addition to his own.[75]  Summary judgment accordingly is due to be granted as to this portion of plaintiff's disparate treatment claim.

## B.     Retaliation

Plaintiff also asserts that, following her complaint of discrimination to Greg Phillips on November 12, 2000, and her EEOC charge filed eleven days later, defendant retaliated against her when it took the following actions: (1) Junkins instructed plaintiff's supervisor, Earl Gunter, that he "didn't need to have any contact with [plaintiff];"[76] and, (2) defendant promoted Ellen Dawkins to district manager.  Plaintiff claims that Dawkins's promotion was retaliatory, because plaintiff was not given the opportunity to apply for the position.[77]  Plaintiff hypothesizes that "Defendant intentionally did not advertise the position so Plaintiff would not apply."[78]

"Retaliation is a separate violation of Title VII."  *Gupta v. Florida Board of Regents,* 212 F.3d 571, 586 (11th Cir. 2000).  Section 704(a) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a)) provides protection for employees who complain about, or otherwise attempt to rectify, an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter [of Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [of Title VII].

---

[75] Defendant's evidentiary submissions, Tab 2 (Junkins deposition), at 60-62.

[76] It is important to note that, while plaintiff was still employed by defendant at the time Gunter received this instruction, she was not working, due to injuries suffered when she slipped and fell in a puddle of water on April 17, 2000.  *See* defendant's evidentiary submissions, Tab 1 (Lewis deposition), at 27-28.  Plaintiff eventually returned to work with defendant for some unspecified period of time, but quit on April 12, 2002, due to her injuries.  *Id.* at 12. Plaintiff now characterizes her employment status as a "medical retirement."  *Id.* at 51.

[77] Plaintiff's brief opposing summary judgment, at 25-26.

[78] *Id.*

42 U.S.C. § 2000e-3(a).

In order to state a prima facie retaliation claim, plaintiff must establish three elements: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal linkage between the protected activity and the adverse employment action. *See, e.g., Bass*, 256 F.3d at 1117; *Gupta*, 212 F.3d at 587; *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir.1997); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

In addition, when (as here) a portion of plaintiff's retaliation claim is based upon conduct falling under the opposition clause of 42 U.S.C. § 2000e-3(a), plaintiff must further demonstrate a good faith, reasonable basis for her belief that the conduct complained of constituted a violation of Title VII, as distinguished from proving that the employer actually engaged in an unlawful employment practice. *See, e.g., Gupta*, 212 F.3d at 586 ("To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to her protest, so long as she had a reasonable good faith belief that the discrimination existed.") (quoting *Meeks*, 15 F.3d at 1021) (internal quotation marks omitted); *Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir. 1989) ("[P]laintiff need only have had a 'reasonable belief' that an unlawful employment practice was occurring."). For purposes of summary judgment, the court will assume that plaintiff possessed a good faith, reasonable basis for her letter of complaint to Phillips (as opposed to her EEOC charge, an act falling under the participation clause).

Plaintiff's retaliation claims are due to be dismissed, because she cannot establish that she

suffered an adverse employment action as to the first incident complained of, and, she cannot demonstrate a causal connection to her protected activity as to the second.

### 1.   Junkins's instruction to plaintiff's supervisor

"An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (addressing an ADA retaliation claim); *see also, e.g.*, *Gupta*, 212 F.3d at 587 (holding, in the context of a Title VII retaliation claim, that "[a]n adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee'") (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). *Cf. Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998) (holding, in the context of a Title VII sexual harassment claim, that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

"Conduct that falls short of an ultimate employment decision must meet 'some threshold level of substantiality . . . to be cognizable under the anti-retaliation clause.'" *Gupta*, 212 F.3d at 587 (quoting *Wideman*, 141 F.3d at 1456). In other words, a plaintiff "must show a serious and material change" in the terms, conditions, or privileges of the job before an employment action can be described as "adverse." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). An employment action does not become "adverse" simply because an employee dislikes it, or disagrees with it. *See, e.g.*, *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996) ("not everything

-21-

that makes an employee unhappy is an actionable adverse action."). That is because "Title VII[] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (citation omitted). Neither "every unkind act,"[79] nor "everything that makes an employee unhappy,"[80] amounts to an *adverse* employment action. "Otherwise, every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (Posner, C.J.) (*quoted with approval in Doe v. DeKalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998)).

On the other hand, "conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute an adverse action under Title VII." *Bass*, 256 F.3d at 1118 (citing *Graham v. State Farm Mutual Insurance Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999), and *Robinson*, 120 F.3d at 1300).

The question of whether an employee has suffered an employment action that is sufficiently material to be actionable normally must be determined on a case-by-case basis, *see Bass*, 256 F.3d at 1118, *Gupta*, 212 F.3d at 587, using both a subjective and an objective standard. *See Doe*, 145 F.3d at 1448-49 (recognizing that the subjective requirement is almost always satisfied, and imposing an objective requirement).

Junkins's instruction to plaintiff's supervisor, Earl Gunter, to not have any contact with plaintiff, falls *far* short of being an adverse employment action.[81] Plaintiff has pointed to no tangible

---

[79] *Doe v. Dekalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998) (quoting *Wu v. Thomas*, 996 F.2d 271, 273 n.3 (11th Cir. 1993) (*per curiam*)).

[80] *Doe*, 145 F.3d at 1450 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)); *see also Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996) ("not everything that makes an employee unhappy is an actionable adverse action.").

[81] Defendant's evidentiary submissions, Tab 3 (Gunter deposition), at 27-28.

effect that this instruction had on her employment.  Indeed, plaintiff was not even working at the time it was given.[82]  Further, plaintiff has not indicated that such an instruction adversely impacted her employment when she did return to work.  Absent such a showing, there can be no finding of an adverse employment action.  *See Lucas*, 257 F.3d at 1261; *see generally* 1 Barbara Lindemann and Paul Grossman, *Employment Discrimination* 669 (1996) (observing that "some courts have held that personality conflicts at work that generate antipathy and make an employee's position more difficult, as well as 'snubbing' by supervisors and co-workers, do not constitute retaliation cognizable under § 704(a)") (footnote omitted).

### 2.    Defendant's promotion of Ellen Dawkins

#### a.    Defendant's motion to strike, or in the alternative, to supplement

That portion of plaintiff's retaliation claim relating to Ellen Dawkins's promotion is the subject of defendant's "motion to strike or, in the alternative, to supplement defendant's evidentiary submission."  Defendant argues that, "[f]or the first time in her brief [in opposition to summary judgment], Plaintiff bases her retaliation claim on a District Manager position awarded to Ellen Dawkins."  Accordingly, defendant "moves to strike this new claim as untimely."[83]  Alternatively, defendant seeks leave to submit the affidavit of the person who promoted Dawkins (Phil Miller), for the purpose of addressing the facts surrounding that action.[84]

Plaintiff responded to defendant's motion to strike by arguing that the pleadings are sufficient to encompass her allegation that the Dawkins promotion was retaliatory.  She also observes that defendant's attorney failed to question her about the factual basis for her retaliation

---

[82] *See supra* note 76.

[83] Defendant's motion to strike, or in the alternative, to supplement its evidentiary submissions, at 1.

[84] *Id.* at 2.

claim at deposition.[85] Finally, plaintiff argues that defendant's motion to supplement the record with Miller's affidavit should not be granted, because Miller was not disclosed as a witness in accordance with the initial disclosures required by Federal Rule of Civil Procedure 26.[86]

While defendant's counsel was remiss in not questioning plaintiff about the factual basis for her retaliation claim during deposition, it also is clear that plaintiff's assertion that the promotion of a female co-employee by a corporate officer located in another state was a retaliatory act is sufficiently surprising that it excuses defendant's failure to name that officer in its initial disclosures. The court further observes that, granting defendant's motion to strike would deny plaintiff a potentially legitimate portion of her claim, while denial of defendant's motion to supplement would force the court to evaluate that claim with only half the facts. Thus, pursuant to this court's inherent discretionary authority, defendant's motion to strike will be denied, but the alternative aspect of that motion, to supplement defendant's evidentiary submissions, will be granted.

### b.    Causal linkage

Plaintiff cannot demonstrate a causal linkage between her complaints of discrimination in November of 2000 and Ellen Dawkins's selection for promotion "around April" of 2001. (The promotion was not effective until June 1, 2001.[87]) When a plaintiff fails to present any evidence of a causal linkage between her protected activity and the adverse employment action allegedly inflicted in retaliation therefor, the court must dismiss the claim. *See, e.g., Bailey v. USX Corp.*, 850 F.2d 1506, 1508 (11th Cir. 1988); *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986); *Hamm v. Members of Board of Regents of State of Florida*, 708 F.2d 647, 654 (11th Cir. 1983). The

---

[85] Plaintiff's response to defendant's motion to strike, or in the alternative, to supplement its evidentiary submissions, at 1-2.

[86] *Id.* at 2.

[87] Plaintiff's evidentiary submissions, Tab 2 (Dawkins deposition), at 37-38.

causation requirement is not onerous: "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994) (quoting *EEOC v. Reichhold Chemical, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)).

The record reflects that Dawkins was offered her promotion to district manager by the director of retail assigned to defendant's Jacksonville, Florida office, Phil Miller, and the director of retail for the Southeast region, Kenny Bell.[88] Both Bell and Miller were physically located in Miami, Florida, at the time, however.[89] As part of his evaluation of Dawkins, Miller contacted the Birmingham office, where both Dawkins and plaintiff happened to be assigned, and solicited feedback regarding Dawkins's suitability for the district manager position. Miller received several endorsements, including recommendations from Greg Phillips and Wayne Junkins.[90] After interviewing Dawkins, Miller decided that she was the best-qualified candidate and offered her the promotion. Miller asserts that, at that time, he "did not know [plaintiff] nor did [he] know that she had filed an EEOC charge."[91] Plaintiff has offered nothing in refutation of that assertion.

Accordingly, no causal inference can be drawn between plaintiff's protected activity and Dawkins's promotion. "[A] plaintiff must show that 'the decisionmakers were aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated.'" *Gupta*, 212 F.3d at 590 (quoting *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)) (internal marks omitted); *see also, e.g., Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("a plaintiff must, at a minimum, generally establish that

---

[88] *Id.* at 29-30.

[89] *Id.* at 29.

[90] *Id.* at 33-34; defendant's supplementary evidentiary submission, doc. no. 21 (Miller affidavit), at 1.

[91] Defendant's supplementary evidentiary submission, doc. no. 21 (Miller affidavit), at 1-2.

the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action"). "It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression." *Bass*, 256 F.3d at 1119 (citing *Raney*, 120 F.3d at 1197 ("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression.")). "That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. BellSouth Telecommunications, Inc.* 231 F.3d 791, 798-99 (11th Cir. 2000).

Even without the benefit of Miller's supplemental affidavit, plaintiff's claim still would fail, because she relies solely upon the temporal proximity between her protected activity and Dawkins's promotion to demonstrate that those two events are not "wholly unrelated." The selection of Dawkins for promotion occurred more than four months after plaintiff's protected activities, however, and any inference of a causal link is broken by such an expanse of time.

Eleventh Circuit precedent establishes that "a close temporal proximity between two events *may* support a finding of a causal connection between those two events." *Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001) (emphasis supplied) (citing *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (stating "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection")); *see also, e.g., Bass,* 256 F.3d at 1119 ("Close temporal proximity between the protected activity and the adverse action *may be* sufficient to show that the two were not wholly

unrelated.") (emphasis supplied) (citing *Gupta*, 212 F.3d at 590 ("For purposes of a prima facie case, 'close temporal proximity' *may be* sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'") (emphasis supplied) (in turn quoting *Farley*, 197 F.3d at 1337)).

As the Supreme Court has observed, however, the temporal gap between events must be "very close." *Clark County School District v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (per curiam) (quoting *O'Neal v. Ferguson Construction Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001), and also citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997), and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992), for the proposition that three and four-month gaps, respectively, between an employer's knowledge of protected activity and an adverse employment action are not sufficiently close to serve as circumstantial evidence of a causal relationship between the two events). Here, plaintiff relies on nothing more than a four-month gap between the two events and, thus, she cannot prove a causal linkage between her protected activities and Dawkins's promotion. Accordingly, her retaliation claim is due to be dismissed.

### III. CONCLUSION

In conclusion, defendant's motion to strike is due to be denied, but ut the alternative aspect of that motion, to supplement defendant's evidentiary submission, is due to be granted. Defendant's motion for summary judgment is due to be granted as to all of plaintiff's claims, except those portions of her disparate treatment claim that are based upon: Gary Starling's receipt of pay raises, ultimately causing him to be paid a higher wage for performing the same job; changes made to plaintiff's sales territory; and Wayne Junkins's refusal to allow plaintiff to attend buying fairs. An

order consistent with this memorandum opinion shall be issued contemporaneously herewith.

DONE this _____ 12th _____ day of December, 2002.

_____
United States District Judge